```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CHRISTIAN BOURIEZ,              )
MONTANELLE BEHEER B.V.          )
                                )
          Plaintiffs,           )
                                )
            vs.                 )  Civil Action No. 02-2104
                                )
                                )  Judge Arthur J. Schwab/
                                )  Magistrate Judge Sensenich
CARNEGIE MELLON UNIVERSITY,     )
                                )  Re: Doc. #66
          Defendant.            )
                                )
```

**MAGISTRATE JUDGE'S AMENDED REPORT AND RECOMMENDATION**[1]

**I.   RECOMMENDATION**

It is recommended that Plaintiffs' Motion to Dismiss Count II of Defendant's Counterclaims be denied.

**II.  REPORT**

Plaintiffs Christian Bouriez and Montanelle Beheer B.V. (Hereinafter collectively referred to as "Plaintiffs" or "Bouriez") invested $5,000,000 in Governors Technologies Corporation ("GTC"), to fund the development of microwave enhanced catalytic cracking technologies.  The investment was made based on representations by

---

[1] This Amended Report and Recommendation is identical to the Report and Recommendation issued on August 28, 2005 except for the correction of typographical errors and additional analysis in response to the objections filed to the original Report and Recommendation on pages 13 and 14 of this Amended Report and Recommendation. (See original Report and Recommendation at Doc. #105, and Objections at Doc. #107).

Defendant Carnegie Mellon University (referred to herein as "Carnegie Mellon" or "CMU"). Bouriez asserts claims against CMU in the nature of fraud (Count I), negligent misrepresentation (Count II), and unjust enrichment (Count III).

On January 31, 2003, CMU filed a Motion to Compel Arbitration or in the Alternative to Dismiss. (Doc # 5.) The District Court granted the Motion to Compel, and Plaintiff appealed. (Docs. #22, 23). The Order was reversed, and the case remanded by the Court of Appeals for the Third Circuit, which determined that Bouriez was not required to arbitrate his claims against CMU because he was not bound by the contract which contained the arbitration clause. See Bouriez v. Carnegie Mellon Univ., 359 F.3d 292 (3d Cir. 2004).

On December 6, 2004, Bouriez filed a Motion to Dismiss Count II of Defendant's Counterclaims arguing inter alla, that the decision of the Court of Appeals reversing the order compelling arbitration invalidated Count II of the Counterclaim in which defendant asserted that Bouriez was the alter ego of GTC and therefore was liable for its debts.(Doc. #66, 67.) Plaintiffs argue that Count II of the Counterclaim must be dismissed under the law of the case doctrine. (Id.)

A.  **Facts**

The Carnegie Mellon Research Institute ("CMRI"), a

department of Carnegie Mellon University that closed in June 2002, engaged in contract research for industry and government through private and public funding. ( Doc. #1 at ¶¶ 11-12.) The research was to produce commercially viable technology that would economically benefit those who funded the research. (Doc. #1 at ¶ 13.)

In 1997, Carnegie Mellon and Governors Refining Technologies LLC ("GRT"), a partially owned subsidiary of Governors Technologies Corporation ("GTC"), entered into an agreement whereby GRT agreed to fund research and development of microwave-enhanced catalytic cracking technology (referred to herein as "the Project"). (Id. at ¶ 22.)

In 1999, Carnegie Mellon approached Bouriez, a private investor, about the project. (Id. at ¶ 25.) Bouriez alleges that CMU represented that it had obtained a "Proof of Concept" on the microwave-enhanced cracking technology. (Id. at ¶¶ 27-28.) Based on those representations, Bouriez agreed to invest $5,000,000 in GTC thereby becoming a shareholder of GTC. GTC then used the money to fund Carnegie Mellon's Project. (Id. at ¶¶ 32-33.)

By the end of 2000, Carnegie Mellon needed additional funding to continue the Project and approached Bouriez for further investment. (Id. at ¶¶ 35, 37.) Before Bouriez would either invest more or find additional investors, the Project underwent an audit. (Id. at ¶ 40.) Plaintiffs allege that the

audit revealed that Carnegie Mellon never had obtained a Proof of Concept on the microwave-enhanced cracking technology. (Id. at ¶¶ 41, 43).  Thereafter, Bouriez filed this suit seeking damages.

    **B.**    <u>**Standard for 12(b)(6) Motion to Dismiss**</u>

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations made in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the plaintiff.  *See* <u>Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.</u>, 998 F.2d 1185, 1188 (3d Cir. 1993); <u>Ditri v. Coldwell Banker</u>, 954 F.2d 869, 871 (3d Cir. 1992).  The issue is not whether the plaintiff will ultimately prevail, but rather whether he can support his claim by proving *any* set of facts that would entitle him to relief.  *See* <u>Hishon v. King & Spaulding</u>, 467 U.S. 69 (1984).  Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."  *See* <u>Port Authority of New York and New Jersey v. Arcadian Corp.</u>, 189 F.3d 305, 311 (3d Cir. 1999).

To survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may reasonably be inferred.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993). It is the defendant who bears the burden of establishing that the

complaint fails to state a claim upon which relief can be granted. Gould Electronics, Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

### C. **Discussion**

#### 1. Law of the Case Doctrine

In Count II of its counterclaim, CMU alleges that Bouriez should be held liable for a breach of contract under the alter ego theory of piercing the corporate veil, or in the alternative under the participation theory, which holds a shareholder liability for participation in a corporation's tortious conduct. (Doc. #50, Ex. 1.) Both claims are based upon allegations that Bouriez exercised control and dominated the operations of GTC, and personally prevented CMU from being paid under its contract with GRT. (Id).

Plaintiffs argue that the Court of Appeals for the Third Circuit evaluated the contract between CMU and GRT (the "1996 Agreement"), and found that Bouriez could not be subject to its arbitration clause, in part because he was not the alter ego of GTC. (Doc. #67 at 3.) Therefore, Plaintiffs claim that the Court of Appeals explicitly, or at least implicitly, rejected CMU's alter ego claim, and the law of the case doctrine bars further reconsideration of the alter ego theory. (Id. at 5.)

Defendant alleges that the law of the case doctrine does not

bar Count II of CMU's counterclaim because the sole issue presented to the Court of Appeals was whether Bouriez, as a non-signatory, was bound by the arbitration clause in the Agreement. (Doc. #72 at 11.)  Thus, Defendant concludes that the issue of piercing the corporate veil under the alter ego theory was never presented to or addressed by the Court of Appeals and that there is no correlation between the alter ego claim and the arbitration issue which was decided. (Id. at 13-16.) Therefore, CMU asserts that the Court did not decide the alter ego claim implicitly.

Plaintiffs reply that the alter ego doctrine is one of five well recognized grounds to bind a non-signatory to an arbitration agreement. (Id. at 2.) They argue that because the District Court's Order was reversed, the Court of Appeals had to find that Bouriez was not bound by the agreement under any theory available, which required the finding that Bouriez was not the alter ego of GTC and GRT.  Therefore, Plaintiffs conclude that even if Bouriez' alter ego status was not explicitly raised, it was implicitly decided by the Court because it was a necessary resolution to determine the outcome of the case.

The United States Supreme Court has repeatedly found that a lower court does not have the authority to deviate from appellate court mandates. Briggs v. Pennsylvania R.R., 334 US 304, 306 (1948). The law of the case doctrine prevents issues which were determined during appeal from being subsequently examined during remand to the lower court. Todd and Co. v. Securities and

Exchange Commission, 637 F.2d 154, 156 (3d Cir. 1980). Thus, when a case is remanded, "the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc., 180 F.3d 542, 546 (3d Cir. 1999)(citing Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir.1985)). The doctrine also promotes the finality of legal issues, the court's interest in efficient administration and protection from circular litigation on the same issue. Todd, 637 F.2d at 156.

The doctrine applies to issues that were expressly decided in the prior ruling, as well as issues that were decided by necessary implication. Bolden v. S.E. Pennsylvania Transp. Auth., 21 F.3d 29, 31 (3d Cir. 1994). When evaluating whether an issue was decided by necessary implication, the court must be consider that:

> There are three grounds under this doctrine by which it may be concluded that an issue was implicitly resolved prior to appeal: resolution of the issue was a necessary step in resolving the earlier appeal; resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; the issue is so closely related to the earlier appeal that its resolution involves no additional consideration and so might have been resolved but unstated.

Guidry v. Sheet Metal Workers International Association, Local No. 9, 10 F.3d 700, 706 (10th Cir. 1993). The lower court may decide any issues which were not foreclosed by the mandate issued by the higher court. Guidry, 10 F.3d at 705. It follows that

7

pursuant to the law of the case doctrine, dictum does not provide a basis for binding effect. Calhoun v. Yamaha Motor Corp., 216 F.3d 338, 344 n. 9 (3d Cir. 2000).

As a preliminary matter, the application of the law of the case doctrine can only be evaluated by reviewing the Court of Appeals decision in Bouriez v. Carnegie Mellon University, 359 F.3d 292 (3d Cir. 2004).

On appeal, the district court's finding that Bouriez "as agent of [GTC] is bound by his principal's agreement to arbitrate and Bouriez embraced the Agreement and directly benefitted therefrom and thus is equitably estopped from avoiding its arbitration clause" was reversed when the Court of Appeals determined that Bouriez was not bound by the 1996 research agreement between GRT and CMU. See Bouriez, 359 F.3d at 294 (internal citation omitted, quoting District Court's Order Compelling Arbitration, available at Doc. #23). The Court noted that three common law theories are used to bind a non-signatory to an arbitration clause, namely third party beneficiary, agency, and equitable estoppel. Bouriez, 359 F.3d at 294. The Circuit Court seemingly addressed all three arguments, although the Court only discussed the district court's determination that Bouriez was bound by the arbitration clause based upon the principles of agency and equitable estoppel. Id.

In evaluating the agency theory, the Court assumed for the purposes of argument that GTC was obligated to arbitrate under

the agreement, although GRT was the signatory, and it further assumed that Bouriez was an agent of GTC. Id. Even with these assumptions, the Court concluded that Bouriez was not required to arbitrate his claims under the clause because the agreement containing the clause predated his involvement with any of the companies, making it a factual impossibility that GRT or GTC was acting under Bouriez' express, implied or apparent authority when it entered into the agreement. Id. at 295.  Thus, the Court concluded that Bouriez could not be bound by the terms of the agreement. Id.

   Assessing the agency analysis in connection with the law of the case doctrine, it is clear that the conclusion of the Court of Appeals regarding that Bouriez was not bound by the Agreement when it was executed prior to his involvement, was not linked to the alter ego theory because the court did not evaluate the relationships between the parties; it only noted that the timing of the agreement prohibited binding Bouriez to the arbitration clause.[2]

   The Court of Appeals next evaluated the equitable estoppel argument, noting that an individual can be estopped from challenging an agreement that includes an arbitration clause when

---

   [2] The Court of Appeals relied upon case law which held that an agent can only be bound by the agreements of its principal when the principal is acting under the agent's implied, apparent or express authority. Bel-Ray Co. v. Chermrite,181 F.3d 435, 445 (3d Cir. 1999). (Applying New Jersey law).

that person embraces the agreement and directly benefits from it. Bouriez, 359 F.3d at 295. The Court found that:

> there is simply no evidence in the record to indicate that Bouriez directly benefitted from the 1996 Agreement. At most the facts show that Bouriez became a minority shareholder in [GTC] for the sole purpose of funding the Project. There is no evidence that any benefit the Project would produce would go to him directly.

Id. at 295. The Court went on to compare the case to another case, Industrial Electronics Corp. Of Wisconsin v. iPower Distribution Group, Inc., 215 F.3d 677 (7th Cir. 2000). Industrial Electronics established that equitable estoppel does not apply when the underlying claims are not based on the agreement containing the arbitration clause because the party asserting the claims does not derive any benefit from the agreement which would warrant estoppel from challenging the other terms of the agreement. See Industrial Electronics, 215 F.3d at 680-81, and Bouriez, 359 F.3d at 295. The Court found Bouriez indistinguishable from Industrial Electronics because Bouriez' claims were not based upon the 1996 agreement which contained the arbitration clause. Bouriez, 359 F.3d at 295. The Circuit Court found that the District Court failed to acknowledge that "Bouriez was one step removed from the 1996 agreement" because his claims against CMU surround a second separate agreement, the share purchase agreement. Id. Thus, the Court concluded that Bouriez could not be equitably estopped from avoiding the arbitration clause in the 1996 agreement. Id. at 296.

The Court's equitable estoppel analysis did not address the issue of whether Bouriez was the alter ego of GTC or GRT because the analysis did not focus upon the relationships between the parties, but was decided solely based upon the basis for Bouriez' complaint against CMU. See Id. at 295. Bouriez' claims were based upon the Share Purchase Agreement which was entered into between Bouriez and GTC. Presumably, if Bouriez had based his claim upon any right or obligation derived from the 1996 agreement he would have been estopped from avoiding the arbitration clause contained within that agreement. However, the Court clearly did not consider the impact of Bouriez' alleged activities in relation to any entity when it evaluated the estoppel argument. Therefore, the Court's analysis does not provide a basis for the application of the law of the case doctrine.

Thus, the Court of Appeals in this case did not expressly find that Bouriez was not the alter ego of GTC or GRT. There is no evidence to suggest that this issue was introduced to the Court beyond a short discussion during oral arguments[3]. The Court seemingly did not evaluate the validity of the alter ego theory based upon those oral arguments because the Court assumed for the purposes of analysis that GTC was liable under the 1996 agreement

---

[3] Plaintiffs cite the transcript of the oral argument before the Third Circuit Court on January 27, 2004, available at Doc. # 67 Ex. B at 18-21 to demonstrate that the Third Circuit was aware that CMU's allegations allegedly blurred the distinct and separate character of Bouriez, GTC and GRT.

and that Bouriez was an agent of GTC.[4]  Therefore, the Court did not need to reach a conclusion regarding the alter ego theory issue in connection with the agency argument.

The clear void in the language of the Court's decision suggests that the issue was not expressly decided.  The Court's statement that the facts only demonstrate that Bouriez was a minority shareholder and that he did not directly benefit under the agreement are related to its analysis under the equitable estoppel argument, but the resolution of the equitable estoppel issue was based on Bouriez' complaint. Id. at 295.  Therefore, contrary to Bouriez' arguments, these statements can not properly be charactered as explicit rejection of the alter ego theory.

Plaintiffs argue that the Court determined that Bouriez was not the alter ego of GTC due to necessary implication, citing in support of this assertion the Court's statements that the facts established that Bouriez became a minority shareholder in GTC for the sole purpose of funding the Project, and that Bouriez was one step removed from the 1996 agreement. Id. CMU claims that the Third Circuit Court only decided that Bouriez was not subject to the arbitration agreement, and that any other determinations were strictly dictum, which is not subject to the law of the case doctrine.

---

[4] See Bouriez, 359 F.3d at 294. ("However, even assuming Bouriez was an agent of Governors Technologies (GTC) and it was obligated to arbitrate under the 1996 agreement, this does not mean that Bouriez was also obligated to arbitrate his claims.")

The Court of Appeals recognized three bases for applying an arbitration clause to a non-signatory: third party beneficiary, agency, and equitable estoppel. See Bouriez, 359 F.3d at 294. The Plaintiffs assert that there are five scenarios which require a non-signatory to be bound to an arbitration clause in a contract, including the alter ego theory of piercing the corporate veil. (Doc. #73.) However, Plaintiffs do not cite any legal authority to support their argument that the Court of Appeals for the Third Circuit recognizes five bases to bind a non-signatory. Further, the only case cited to support their argument that the alter ego theory is a basis for binding a non-signatory involved the substantive contract law of Delaware, not Pennsylvania.[5] (See

---

[5] Plaintiff objected to the Court's notation that the substantive law discussed in E.I. Dupont De Nemours and Company v. Rhone Poulenc Fiber and Resin Intermediates, 269 F.3d 187 (3rd Cir. 2001) was that of Delaware and not Pennsylvania. Plaintiffs had cited this case to support their assertion that the Court of Appeals for the Third Circuit recognizes the alter ego theory of piercing the corporate veil as a basis to bind a non-signatory to a arbitration clause. However, this case does not establish that the Court of Appeals for the Third Circuit has adopted this approach. This Court's notation was intended to clarify that the only mention of alter ego theory in the cited case was during the E.I. Dupont Court's discussion of Delaware agency law. Specifically, the case notes that "Under Delaware law: One corporation whose shares are owned by a second corporation does not by that fact alone, become the agent of the second company. However, one corporation-completely independent of a second corporation- may assume the role of the second corporation's agent... under this second theory (of agency) total domination or general alter ego criteria need not be proven. ... unlike the alter ego piercing the corporate veil theory, when customary agency is alleged the proponent must demonstrate ... ." 269 F.3d at 198. Thus, Plaintiffs' citation does not support its assertion, and the notation that the substantive law discussed was that of Delaware and not Pennsylvania was specific to the

Doc. #67.) Finally, there is minimal evidence that the Court even considered the third scenario, third party beneficiary, although that is one of the grounds which it recognized for binding a non-signatory to an arbitration clause. However, the Court did not analyze this ground or identify it as a basis for its decision.

Therefore, it is recommended that Plaintiffs' Motion to Dismiss Count II based upon the law of the case doctrine be denied.

### 2. Other Arguments

In Pennsylvania, no breach of contract action will lie against individual shareholders of a corporation based on a contract entered into by the corporation. Loeffler v. McShane, 539 A.2d 876 (Pa. Super. 1988). "[T]he breach of the contract is the breach of a promise made by the corporation, and not the breach of any promise extended by the corporate officer." Id. at

---

fact that the only mention of alter ego was in the context of contrasting Delaware substantive agency law.  The application of the doctrine of necessary implication requires an issue to have been decided when "resolution of the issue would abrogate the prior decision." Guidry v. Sheet Metal Workers Local No.9, 10 F.3d 700, 707 (10th Cir. 1994). Thus, in order for the Plaintiffs to support their assertion that the issue was decided by necessary implication, they must first establish that the alter ego theory is a basis to bind a non-signatory. Plaintiffs have not established that the Court of Appeals for the Third Circuit has adopted the alter ego theory as a basis to bind a non-signatory by their citation to E.I. Dupont De Nemours and Company. The substantive law of Delaware is not relevant to this case because contract interpretation is controlled by the substantive law of Pennsylvania as dictated by the contract's choice of law provision, and the parties arguments.

879. Liability can be imposed on shareholders based upon a corporation's contract based upon two theories, either the participation theory or by piercing the corporate veil. <u>First Realvest, Inc v. Avery Builders, Inc.</u>, 600 A.2d 601, 603 (Pa.Super. 1991). Both theories are asserted by CMU in Count II of its Counterclaim.

Plaintiffs' Motion to Dismiss argues that CMU has failed to allege a basis for piercing the corporate veil because it did not have a contract with GTC, the corporation of which Bouriez was a shareholder, but rather its contract with GRT, a partially owned subsidiary of GTC. (See Doc. #67). Further, Plaintiffs contend that CMU has failed to state a claim under the participation theory because the allegations are based in contract not tort, and that CMU did not aver that Bouriez individually extended any promises of payment to it for the corporate debt of GTC or GRT. (See Id.) Plaintiffs also argue that the theory only applies to corporate officers, and Bouriez was not an officer. (Id.)

Plaintiffs have raised these same arguments in their Motion for Summary Judgment which is pending before this Court. Discovery has been completed, and therefore the issues will be considered based upon the full summary judgment record.

Therefore, the Motion to Dismiss Count II of the Defendant's Counterclaim based upon failure to state a claim under either the participation theory or the alter ego theory of piercing the

15

corporate veil should be denied without prejudice to consider in Plaintiff on summary judgment.

### III.     **CONCLUSION**

For the foregoing reasons, it is recommended that the Motion to Dismiss be denied.


In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                                      /S/ *Ila Jeanne Sensenich*
                                                      ILA JEANNE SENSENICH
                                                      U.S. Magistrate Judge

Dated: September ___, 2005

cc:   The Honorable Arthur J. Schwab
      United States District Judge

      George E. Yokitis, Esq.
      DeForest Koscelnik Yokitis & Kaplan
      Koppers Building, 30th Floor
      436 Seventh Avenue
      Pittsburgh, PA 15219

      David J. Laurent, Esq.

Bᴀʙsᴛ, Cᴀʟʟᴀɴᴅ, Cʟᴇᴍᴇɴᴛs ᴀɴᴅ Zᴏᴍɴɪʀ, P.C.
Two Gateway Center
Pittsburgh, PA 15222

James A. Vollins, Esq.
Sǫᴜɪʀᴇ, Sᴀɴᴅᴇʀs & Dᴇᴍᴘsᴇʏ
127 Public Square
4900 Key Tower
Cleveland, OH 44114-1304