IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN BOURIEZ,
MONTANELLE BEHEER B.V.,

    Plaintiffs,                                    02cv2104

v.                                              **Electronically Filed**

CARNEGIE MELLON UNIVERSITY.

    Defendant.

## **MEMORANDUM OPINION**

### **I.  INTRODUCTION**

Pending before the Court is the parties' request that the Court determine the preclusive effect of the Arbitration Award, issued on August 25, 2006, in an arbitration between defendant Carnegie Mellon University (CMU) and Governors Refining Technologies (GRT) and Governors Technologies Corporation (GTC) (collectively referred to as "Governors").  See Hearing Memo of November 12, 2009 (doc. no. 242).  This Court had granted CMU's motion to compel arbitration and ordered Plaintiffs Christian Bouriez ("Bouriez") and a corporation owned by Bouriez, Montanelle Beheer B.V. (collectively "Plaintiffs"), to participate in the arbitration proceeding in the International Centre for Dispute Resolution initiated by CMU against Governors, Plaintiffs and two other individuals.  See Order of Court Regarding Arbitration (Doc. No. 22), February 27, 2003.  Plaintiffs challenged that Order and, on appeal, the United States Court of Appeals for the Third Circuit agreed with Plaintiffs that they were not bound by the arbitration provision in the 1996 Master Agreement between CMU and Governors' predecessor and did not have to participate in said arbitration proceedings.  Bouriez v. Carnegie Mellon

Univ., 359 F.3d 292, 295 (3d Cir. 2004).

The Arbitration Award rescinded the agreement between Governors and CMU, and required CMU to refund all funds received by CMU from Governors pursuant to said agreement. The total amount of the award was $9,935,490.08, in damages, interest, costs, and fees. CMU did not appeal the award and paid the almost $10 million to Governors. Now, Plaintiffs ask this Court to recognize the preclusive effect of the final Arbitration Award to prohibit CMU's relitigation of the issues decided adversely to CMU therein.

The Court has reviewed and analyzed in detail the various excellent briefs filed by the parties relating to the preclusive effect, if any, of the Arbitration Award to this litigation, including Plaintiffs' related requests that the Court set aside its prior four (4) Orders granting certain Motions in Limine of Defendant (doc. nos. 178, 179, 182, and 183). The legal standard for issue preclusion (or collateral estoppel) under Pennsylvania law is accurately summarized by CMU in its Reply Brief (doc. no. 254) at 4, as follows:

(1) An issue decided in a prior action is identical to one presented in a later action;

(2) The prior action resulted in a final judgment on the merits;

(3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and

(4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998). See Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999) (citing the Restatement (Second) of Judgments at 327) and Schubach v. Silver, 336 A. 2d 328, 334 (Pa. 1975).

Applying those standards to the Arbitration Award herein, this Court rules that said Award has preclusive effect on critical issues in this case and that, consistent with the issue preclusive Arbitration Award, three of the prior four Orders relating to CMU's Motions in Limine (doc. nos. 178, 179, and 182) should be vacated, but the Order re: Punitive Damages (doc. no. 183) should remain in effect.

## II.  FACTUAL SUMMARY

This Court's Memorandum Opinion (doc. no. 234), dated August 30, 2009, granting CMU's Motion for Summary Judgment on all counts of the Complaint, and the reversal thereof by the Opinion and Judgment of the United States Court of Appeals for the Third Circuit, dated October 26, 2009 (doc. no. 240, 246), provides detailed descriptions of the factual allegations and legal contentions of the parties, so that this Court will not repeat same in this Opinion by way of background.

## III.  PRECLUSIVE EFFECT

This case presents the ever-interesting issue of the preclusive effect of a legal decision, in this case a final and binding Arbitration Award against a party to the Arbitration, by a non-party thereto.[1]

First, this litigation involved multiple issues - - factual and legal - - as did the arbitration. While there are some differences between the arbitration and this case, certain essential issues are common to both proceedings, including that CMU made false representations to Governors, to which plaintiff made a $5 million investment to fund a microwave catalytic cracking project that

---

[1] While CMU makes much of the fact that, in hindsight, plaintiff foolishly and aggressively, yet successfully, avoided the arbitration proceedings, this fact does not change the legal analysis except it places plaintiff in the "non-party" category of the legal analysis.

CMU had developed to transform heavy hydrocarbons into useable petroleum products.

It is obvious in comparing Arbitrator Barry Unger's Opinion and Interim Partial Award, Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment (doc. no. 220), Exhibit A (doc. no. 220-1) with the October 26, 2009 Opinion of the Court of Appeals for the Third Circuit, 585 F.3d 765 (3d Cir. 2009) (doc. no. 246-1), that identical factual and legal issues were critical to the arbitration proceeding and are critical to this litigation regarding the microwave catalytic cracking technology and CMU's misrepresentations to *both* Governors and the Bouriez Plaintiffs, as the Court of Appeals explicitly stated:

> After the parties in this case completed discovery and were awaiting trial, the Arbitrator issued an Opinion and Final Award in favor of Governors and against CMU, concluding that CMU falsely represented to Governors that its microwave technology worked. [FN3] The Arbitrator ordered CMU to pay Governors $9,935,490.08 in rescissory damages, interest, costs, and fees. CMU declined to appeal the Arbitrator's decision and satisfied the award.
>
> > [FN3] Specifically, the Arbitrator concluded that CMU was liable for breach of contract and negligent misrepresentation: "GRT has proved by a preponderance of the evidence that CMRI did not have an adequate basis to represent that it had 'proved' or 'demonstrated' what it *claimed in the . . . [December 11] Proposal*." J.A. 272. CMRI therefore "failed to deliver the most basic consideration it was to deliver in return for the monies to be provided by GRT," and CMU had "breached its agreement with GRT in such a fundamental manner as to constitute a failure of consideration and, therefore, rescission is appropriate." *Id*. Moreover, the Arbitrator found that "even if GRT would not have been entitled to rescission based on its breach of contract theory, it is entitled to rescission on its negligent misrepresentation claim," J.A. 279, because CMU had a "confidential relationship" with Governors and therefore had an affirmative duty of "full and frank disclosure," which it breached, J.A. 277-78.

Bouriez v. Carnegie Mellon Univ., 585 F.3d at 769 and n.3 (emphasis added).

Relevant to the Bouriez Plaintiffs' litigation in this Court, the Court of Appeals also made

the following findings:

> In encouraging Bouriez to invest in microwave technology, CMU presented him with a document entitled "Proposal for a Project Plan for Microwave Enhanced Catalytic Processing" (hereinafter *"December 11 Proposal")*. J.A. 362. *CMU gave this same document to Governors earlier to obtain Governors' investment.* See J.A. 325. *In the December 11 Proposal, CMU represented, inter alia, that certain technological improvements have been "demonstrated" and that CMRI reached the "proof of concept" stage of development for the technology.* J.A. 329. *The December 11 Proposal also listed several purported "microwave enhancements" that CMRI had "proven."* J.A. 330. . . .
>
> Furthermore, in a presentation to Bouriez in July 1999, CMU indicated that the data-collection phase of its research would be completed within six months and that the commercialization phase would begin approximately two years thereafter. J.A. 375. In a later presentation, CMU provided financial projections estimating that Governors would generate $37.5 million in profits by the year 2003, based on the then-current state of the research. . . .
>
> On October 5, 1999, Bouriez signed two written agreements: the "Share Purchase Agreement" and the "Shareholders Agreement." J.A. 930. Pursuant to these agreements, Bouriez invested $5 million in Governors to fund the work being done by CMRI under Governors' sponsorship. In exchange, Bouriez received 6.25 million shares of Governors' stock, which he still owns. The price of these shares was based entirely on the potential value of Governors' contract with CMU and the microwave technology that it was funding.
>
> \* \* \*
>
> Bouriez produced sufficient evidence to raise a genuine issue of material fact as to whether CMU's misrepresentations were a "substantial factor" in causing his failed investment in Governors. . . .
>
> Specifically, *Bouriez presented evidence that CMU made representations directly to him that its microwave technology actually worked. For example, in the December 11 Proposal*, CMU stated that the technology was "proven," had been "demonstrated," and that it established the "proof of concept." Bouriez also introduced evidence that the potential value of CMU's technology was the only basis for Bouriez's investment in Governors, because Governors' contract with CMU was the sole potential means for Governors to have any value or to be profitable. Next, Bouriez proffered evidence that CMU's technology did not work and has never worked. . . .

Id. at 767-68, 772-73 (footnote omitted; emphasis added).

With this background, CMU cannot now successfully argue that the microwave technology in fact worked and that its representations about said technology were true, or at least were not false, nor can it claim that the issues of its misrepresentations to both Governors and to Bouriez and their reliance on the exact same representations, including those made in the December 11 Proposal, have not been previously fully litigated in the arbitration proceeding. The first prong thus is satisfied that the essential issues decided in the arbitration are identical to the ones presented in this case.

The second and third prongs also are satisfied, since the arbitration "resulted in a final judgment on the merits" and since "the party against whom collateral estoppel is asserted," CMU, "was a party to the prior action," the arbitration. [2]

Finally, as to the fourth prong, whether CMU "had a full and fair opportunity to litigate the issue[s] in the prior action," the answer is in the affirmative. Plaintiffs summarized the extensive nature of the arbitration hearing (undisputed by CMU) as follows:

> The Award, on the other hand, is now a final judgment and binding on CMU as a matter of law. The arbitration hearing lasted over twenty days spanning several months, in which the Arbitrator heard testimony from five experts and admitted over two hundred exhibits into evidence. The parties each submitted substantial pre-hearing briefs and equally substantial post-hearing briefs, as well as responses to the Arbitrator's questions regarding the facts and the law governing the parties' relationship and the Project. Only after considering all of this evidence, evidence never presented to this Court, did the Arbitrator issue his Award, which CMU did not challenge.

Plaintiff's Brief (doc. no. 247) at 5.

---

[2] An unappealed arbitration award is a final judgment that may be entitled to preclusive effect if all of the elements of issue preclusion are demonstrated. Witkowski, 173 F.3d at 199-200.

CMU attempts to redefine the test to require that the party "had a full incentive . . . to litigate the matter," as well as "a full and fair opportunity" to litigate the matter, citing Irizarry v. Office of Gen. Counsel, 934 A.2d 143, 151 (Pa. Cmwlth. 2007), and other authorities.  CMU then argues that since Plaintiffs did not participate in the arbitration, CMU had "no incentive" to litigate the issues as to the Bouriez Plaintiffs.  However, since the essential misrepresentations and reliance issues in the arbitration proceeding are identical to the misrepresentations and reliance issues in this case, and since CMU was vigorously represented by excellent counsel in that arbitration in which millions of dollars and the viability of the microwave catalytic cracking project were at stake, the Court finds that CMU was well-incentivized to fully and effectively litigate the arbitration.  Facing liability in the millions (the actual award was almost $10 million), the Court does not find credible CMU's assertion that it would somehow have "more fully" litigated the arbitration if Plaintiffs' potential award of approximately $5 million against CMU (plus punitive damages) was factored into its litigation risk calculation.

### IV.  ORDERS OF COURT GRANTING MOTIONS IN LIMINE

The Court previously granted four (4) Motions in Limine of CMU by Orders of Court.  See doc. nos. 178, 179, 182, and 183.  Plaintiff argues that in light of the Arbitration Award and the decision of the United States Court of Appeals for the Third Circuit vacating this Court's granting of Summary Judgment in favor of CMU and remanding the case for further proceedings, these four (4) Orders should be vacated.  The Court agrees that three (3) of the Orders should be vacated in light of the preclusive effect of the Arbitration Award - - doc. no. 178 (Order Granting Doc. No. 132 ), doc. no. 179 (Order Granting Doc. No. 134), and doc. no. 182 (Order Granting Doc. No. 137), and will so Order.

However, as to the Order Granting Doc. No. 138 and excluding punitive damages, the Court still believes that said Order was well-founded and thus said Order will not be vacated. The Arbitration Award specifically found that Governors could not sustain its burden of proving fraudulent misrepresentation, only negligent misrepresentations or omissions by CMU. The Court believes that finding, as supported by Arbitrator Unger's well-reasoned Opinion and Interim Partial Award (doc. no. 220-1), precludes Plaintiffs from maintaining a claim for punitive damages.

**SO ORDERED** this 12th day of February, 2010.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record