IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTIAN BOURIEZ,
MONTANELLE BEHEER B.V.,

    Plaintiffs,                                            02-cv-2104

v.                                                              **Electronically Filed**

CARNEGIE MELLON UNIVERSITY.

    Defendant.

**MEMORANDUM OPINION GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 259);
DENYING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT (DOC. NO. 263); AND
DENYING DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT (DOC. NO. 265)**

**I.    Introduction**

Before the Court are plaintiffs' motion for partial summary judgment on their negligent misrepresentation claim (Doc. No. 259); defendant's motion for partial summary judgment on plaintiffs' negligent misrepresentation claim, based upon the applicability of Pennsylvania's economic loss doctrine (Doc. No. 263); and defendant's motion for partial summary judgment on plaintiffs' claim for prejudgment interest/delay damages (Doc. No. 265). After careful consideration of the several motions, the responses thereto, the memoranda and documentary materials in support and in opposition, and the entire record in the case, the Court will grant plaintiffs' motion for partial summary judgment on negligent misrepresentation, deny defendant's motion with regard to the economic loss doctrine defense to negligent misrepresentation, and deny defendant's motion for summary judgment as to prejudgment interest and delay damages, for the reasons set forth below.

## II. Negligent Misrepresentation and the Economic Loss Doctrine

This Court has previously held that the Arbitration Award against defendant Carnegie Mellon University ("CMU") has preclusive effect in this litigation,[1] including as to the issues of CMU's material misrepresentations to both the Governors entities (who were parties to the arbitration) and to plaintiffs (who were not), and their detrimental reliance on the exact same misrepresentations made to both.[2] As is implicit in the Court's ruling on the preclusive effect of the Arbitration Award, plaintiffs are correct that said Award establishes its claim of negligent misrepresentation against CMU herein. Plaintiffs' motion for partial summary judgment on the liability aspect of its negligent misrepresentation claim must therefore be granted. Moreover, Pennsylvania's economic loss doctrine does not bar plaintiffs' claim of negligent misrepresentation against CMU, and its motion for partial summary judgment based on this defense must therefore be denied, for several reasons.

### A. Background

Except as necessary for the discussion herein, the Court will not repeat the factual background or the protracted procedural history of this case, which has been recounted in several United States Magistrate Judge Reports, Memorandum Opinions of this Court and Opinions of the United States Court of Appeals for the Third Circuit. *See* (Docs. Nos. 22, 28, 103, 110, 111,

---

[1] *See* Memorandum and Order of Court, February 10, 2010 (Doc. No. 257), holding that the Arbitration Award had a preclusive effect in this litigation, and, inter alia, vacating this Court's Order of June 22, 2006 (Doc. No. 182), which, pursuant to the economic loss doctrine, had precluded evidence regarding CMU's alleged negligent misrepresentation.

[2] *See id*. at 6 ("It is obvious in comparing Arbitrator Barry Unger's Opinion and Interim Partial Award . . . with the . . . Opinion of the Court of Appeals . . . that identical factual and legal issues were critical to the arbitration proceeding and are critical to this litigation regarding the microwave catalytic cracking technology and CMU's misrepresentations to both Governors and the Bouriez Plaintiffs . . . .").

2

234, 246-1, 257 ).  Suffice it to say that CMU's pending Motion for Partial Summary Judgment On Plaintiffs' Negligent Misrepresentation Claim Based Upon The Applicability Of The Economic Loss Doctrine (Doc. No. 263) is not the first time CMU has asserted the economic loss doctrine as a defense to plaintiffs' Christian Bouriez and Montanelle Beheer B.V.'s  negligent misrepresentation claim.

In August 2006, the Arbitration Award of almost $10 million was entered against CMU in its arbitration with Governor's Refining Technologies Corporation, LLC, and Governor's Technologies Corporations.[3]  The Award held that the economic loss doctrine did not apply to the Governors entities' counterclaims against CMU because: "Where there is a duty, and the plaintiff's claim arises from a breach of that duty independent of any rights arising from a breach of contract, the plaintiff is entitled to assert a tort, as well as a contract, claim.  *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, [866 A.2d 270, 277 (Pa. 2005)].  I have found such an independent duty [of CMU] to disclose here." Arbitration Award, at 39 n.58.

CMU argues now, as it previously did before the Arbitrator, this Court and the Court of Appeals, all unsuccessfully, that pursuant to Pennsylvania's economic loss doctrine, "'[p]urely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act.'  *Margolis v. Jackson*, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988)."  CMU's Motion for Partial Summary Judgment (Doc. No.

---

[3] The arbitration involved the microwave catalytic cracking technology that CMU claimed to have developed under a contract with Governor's Refining Technologies Corporation, LLC, with funding by its parent company, Governor's Technologies Corporations. Plaintiffs declined to participate in the arbitration, as the United States Court of Appeals for the Third Circuit held was their right to do, *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 295 (3d Cir. 2004), and the arbitration proceeded on the claims and counterclaims between CMU, the Governors entities, and two individuals who were ultimately dismissed from the arbitration.

263), ¶ 3.

### B. Legal Discussion

Initially, the Court holds, as it has before, that on the merits, the economic loss doctrine does not bar plaintiffs' negligent misrepresentation claim, notwithstanding defendant's assertion that a recent decision of the Pennsylvania Supreme Court, *Excavation Tech., Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840 (Pa. 2009), "clarified" the economic loss doctrine and "makes it clear" that the Arbitration Award's economic loss doctrine holding is contrary to Pennsylvania law. Although *Excavation Technologies* may have "clarified" the economic loss doctrine law in some respects, it did not alter the economic loss doctrine in a way that inures to CMU's benefit.

The economic loss doctrine precludes recovery for economic losses in a negligence action where the plaintiff has suffered no physical or property damage. *Spivack v. Berks Ridge Corp.*, 402 Pa.Super. 73, 78, 586 A.2d 402, 405 (1991) ("economic losses may not be recovered in tort (negligence) absent physical injury or property damage"); *Aikens v. Baltimore & Ohio R.R. Co.*, 348 Pa.Super. 17, 22, 501 A.2d 277, 279 (1985) ("no cause of action exists for negligence that causes only economic loss"). This generally includes actions for negligent misrepresentation. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995). *See also North Am. Roofing & Sheet Metal Co. v. Building & Constr. Trades Council*, No. Civ. A. 99-2050, 2000 WL 230214, at *7-8 (E.D.Pa. 2000) (relying on the economic loss doctrine to dismiss a claim for negligent misrepresentation).

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Duquesne Light Co.,* 66 F.3d at 618. The

4

doctrine is premised on the notion that parties to a contract may protect themselves from negligence or defective products by negotiating the liability terms of the contract. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872-73 (1986).[4] Like the gist of the action doctrine, the purpose of the economic loss doctrine, as adopted in Pennsylvania, is "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 387 Pa.Super. 537, 550, 564 A.2d 919, 925 (1989).[5] *See also Bilt-Rite Contractors, Inc. v. Architectural Studio*, 581 Pa. 454, 866 A.2d 270 (2005) (adopting Restatement (Second) of Torts Section 552, Pennsylvania Supreme Court holds that architect hired by developer could be liable to third-party contractor for negligent misrepresentation, in spite of contractor's lack of contractual privity with architect, and that the traditional bar against recovery in tort for economic losses between contracting parties did not apply); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675-76 (3d Cir. 2002) (predicting that the Pennsylvania Supreme Court would apply the economic loss doctrine to claims of intentional fraud between contracting parties, but noting with approval a trend in federal courts "'recogniz[ing] a limited exception to the economic loss doctrine for fraud claims, but only where the claims at issue arise independent

---

[4] The economic loss doctrine originally applied only to product liability claims, with the expectation that parties could recover purely economic damages caused by a defective product under contract theory. *Transamerica Delaval, Inc.*, 476 U.S. at 871. The expanded reach of the doctrine to cover negligence has been justified on the basis that parties can protect themselves by negotiating the terms of a manufacturer's liability. *Id*. at 872-73. Pennsylvania courts addressing the economic loss doctrine have accepted the Supreme Court's rationale and focused on the ability of the purchaser to recover economic harm under a breach of warranty claim. *See REM Coal Co. Inc. v. Clark Equipment Co.*, 386 Pa.Super. 401, 563 A.2d 128 (1989) (en banc).

[5] *See, e.g.*, *Constar, Inc. v. National Distrib. Centers, Inc.*, 101 F.Supp.2d 319, 322 (E.D.Pa. 2000) (the economic loss doctrine "prohibits recovery in tort for economic losses to which the party's entitlement flows only from a contract"); *Sunquest Info. Sys. v. Dean Witter Reynolds*, 40 F.Supp.2d 644, 659 n. 13 (W.D.Pa. 1999) ("the economic loss analysis appears similar, if not identical to, the application of the 'gist of the action' doctrine").

[ly] of the underlying contract.'").

As the first decision of the United States Court of Appeals for the Third Circuit made clear, CMU and the Bouriez plaintiffs were not bound by contract. *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d at 294-95.[6] Accordingly, plaintiffs' negligent misrepresentation claim is not precluded by the economic loss doctrine, and defendant's motion for partial summary judgment on that defense will be denied.[7]

### III.    Prejudgment Interest and Delay Damages

The Court also finds that the amount of damages caused by defendant's negligent misrepresentation is definitively established by the record, and that the amount of damages is amenable to summary judgment.  Plaintiffs' motion for partial summary judgment on the issue of damages, prejudgment interest and delay damages for negligent misrepresentation will therefore be granted, and defendant's will be denied.

#### A.    Prejudgment Interest

In federal diversity actions, state law governs awards of prejudgment interest. *Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 574 (3d Cir. 1998).  Under Pennsylvania law,

---

[6] CMU's reliance on the *Excavation Technologies* decision is not unreasonable, as it does hold that a public utility was not liable, on a negligent misrepresentation theory, for purely economic loss that a contractor sustained as the result of the utility's failure to properly mark the location of all of gas lines around a construction site, with the result that the contractor struck certain gas lines and the construction project was delayed.  However, this Court finds the *Excavation Technologies* case to be *sui generis* because of the public utility's status, as the Pennsylvania Supreme Court  explained:  "We find it apparent our legislature did not intend utility companies to be liable for economic harm caused by an inaccurate response under the [One Call Act, 73 P.S. § 177(5)(i)], because it did not provide a private cause of action for economic losses."  985 A.2d at 842.

[7] Additionally, CMU's economic loss doctrine defense is foreclosed by the preclusive effect of the Arbitration Award on this issue, and by this Court's previous ruling, *see* notes 1 and 2, supra, and accompanying text.

prejudgment interest is awarded as a legal right in contract cases. *Parexel Int'l Corp. v. Feliciano*, 2008 WL 5467609 (E.D. Pa. 2008), citing *Fernandex v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988). This applies whether damages are liquidated or unliquidated. *Edwards v. Wyatt*, 330 Fed.Appx. 342, 352-53 (3d Cir. 2009). *See also Spang & Co. v. USX Corp.*, 599 A.2d 978, 983-84 (Pa.Super. 1991).

Courts also have the discretion to award prejudgment interest for tort claims. Discretionary awards of prejudgment interest in tort cases serve "the purpose of making whole the injured party." *Levy v. First Pa. Bank N.A.*, 1982 WL 290370 (Pa. Com. Pl. 1982). Prejudgment interest in tort cases is only available for liquidated damages. *See Marrazzo v. Scranton Nehi Bottling Co., Inc.*, 263 A.2d 336, 337 (Pa. 1970). Discretionary damage awards should be "given in response to considerations of fairness [and] denied when its exaction would be inequitable." *Bd. of Comm'rs of Jackson County, Kansas v. United States*, 726 F.2d 972, 981-82 (3d Cir. 1984).

The United States Court of Appeals for the Third Circuit has adopted a four-prong test to determine if an award of prejudgment interest is appropriate. *Feather v. United Mine Workers of Am.*, 711 F.2d 530, 540 (C.A. Pa. 1983). In *Feather*, the Court of Appeals held district courts, "must consider four factors in determining the propriety of a prejudgment interest award: (1) whether the claimant has been less than diligent in prosecuting the action; (2) whether the defendant has been unjustly enriched; (3) whether an award would be compensatory; and (4) whether countervailing equitable considerations militate against a surcharge." *Feather*, 711 F.2d at 540. After evaluating the particular circumstances of a case, a court may award prejudgment interest if equity so requires. *See Calgon Carbon Corp. v. Potomac Capital Inv.*, 2007 WL

...

2907865 (W.D. Pa. 2007).

### B. Delay Damages

The Supreme Court of Pennsylvania promulgated Rule 238, which authorizes a court to award damages to plaintiffs for delay in personal injury, wrongful death, and property damage actions. Pa.R.Civ.P. 238. Rule 238 provides, except for certain exceptions not herein relevant, that delay damages are to be awarded "for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision." Pa.R.Civ.P. 238(a)(2).

Federal Rule of Civil Procedure 56(d)(1) permits courts to rule on delay damages at the summary judgment stage. Fed.R.Civ.P. 56(d)(1). The purpose of delay damages is both procedural, "encouraging settlement and clearing the dockets" and compensatory, "compensating plaintiffs for the lost time value of money." *Francisco v. United States*, 54 F.Supp.2d 427, 432 (E.D. Pa. 1999). "Delay damages are a form of pre-judgment interest designed to compensate a prevailing plaintiff for the loss of funds that the jury verdict reflects were owed to plaintiff if the funds were properly received." *Costa v. Lauderdale Beach Hotel*, 626 A.2d 566, 569 (Pa. 1993).

Furthermore, the Supreme Court of Pennsylvania has ruled that discretionary delay damages are available for tort claims for both liquidated and unliquidated damages. *Marrazzo*, 263 A.2d at 337. However, in deciding whether to award delay damages, courts should consider if delay was caused by either party's unwillingness to settle and reasonableness of their positions. *Id*. at 338. Delay damages are deemed inappropriate where plaintiff has made unreasonable demand, in which case, "he [plaintiff] cannot complain that he had not had the use of the money during the period of litigation." *Id*. at 336 (citing *Conover v. Bloom*, 112 A. 752 (Pa. 1921)).

8

Defendants have the burden of proving that any demand made was unreasonable. *Id.* at 338.

C.   **Application**

CMU's misrepresentations proximately caused injury to Plaintiffs. The entire value of Plaintiffs' $5,012,500 investment (this amount is not in dispute) in Governors was based on the potential value of CMU's microwave technology, as CMU had misrepresented that technology to exist. At all relevant times from their initial investment until the discovery of CMU's misrepresentations, CMU's technology had no (zero) value, and so the actual value of the 6.25 million shares plaintiffs acquired for their investment was $0.00.

The overwhelming majority of the delay in the ultimate return of plaintiffs' lost investment was because of CMU's litigation and prelitigation tactics.[8] Pursuant to the above referenced standards for prejudgment interest and delay damages in Pennsylvania, such damages are plainly warranted in this case, and are calculated at the rate of 6% simple interest per year. 41 Pa. Stat. § 202 (statutory rate of interest in Pennsylvania is 6%).[9]

However, plaintiffs have received three separate distributions as shareholders of Governors, and they concede that they are not entitled to "double recovery" for the amounts of said distributions. The amounts and dates of distribution are not in dispute, and are as follows:

---

[8] The Court does not imply that any of CMU's tactics were improper, especially in light of the fact that CMU's litigation tactics were initially successful before this Court.

[9] The Court rejects defendant's intervening cause argument as to any credit for the $1.35 million improperly dispersed by Governors' officers. A superseding cause is an "intervening force" that causes some or all of the plaintiff's injury, and thus relieves the defendant of liability for that amount of the plaintiff's loss. *See Bouriez*, 585 F.3d at 773 n. 4. Here, the alleged diversion could not have caused any of plaintiffs' injury because CMU's misrepresentations proximately caused plaintiffs' shares in Governors to lose their entire value. Plaintiffs' injury was therefore complete at the moment of their investment, and no intervening force caused, or contributed to, plaintiffs' loss.

9

$1,819,888.14 on March 28, 2008; $284,980.50 on May 30, 2008; and $126,448.43 on February 6, 2009. Each time plaintiffs received a distribution, the total amount of loss on which delay damages are imposed must be reduced by the amount of the distribution.

An award of delay damages on these amounts at the rate of 6% simple interest per year results in a total delay damages award of $2,904,615.36 through March 11, 2010. As such, plaintiffs are entitled to recover $5,012,500 for the injuries proximately caused by CMU's misrepresentations, plus $2,904,615.36 in delay damages through March 11, 2010, less the $2,231,317.07 that plaintiffs have received from Governors in mitigation of their losses.[10] CMU is therefore liable to plaintiffs for negligent misrepresentation in the amount of $5,685,798.29, as of March 11, 2010.

A separate Judgment Order will follow.

                                                   s/ Arthur J. Schwab
                                                 Arthur J. Schwab
                                                 United States District Judge

cc:     All counsel of record

---

[10] As set forth in Plaintiffs' Brief in Support of its Motion for Partial Summary Judgment (Doc. No. 260 at 12-14) and proposed Order of Court (Doc. No. 261 at 21-23), the amounts on which delay damages will be awarded are, therefore, divided as follows: (a) from the date of Plaintiffs' investment (September 15, 1999) to the date of the first distribution from GTC (March 28, 2008) -$5,012,500; (b) from the day following the first distribution from GTC (March 29, 2008) to the day of the second distribution (May 30, 2008) -$3,192,611.86; (c) from the day following the second distribution from GTC (May 31, 2008) to the day of the third distribution (February 6, 2009) -$2,907,631.36; and (d) from the day following the third distribution from GTC (February 7, 2009) to the date of this Judgment - $2,781,182.93. CMU does not take issue with plaintiffs' mathematical calculation of damages.